IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | NO. 02-344 |
| v. | : | |
| CECIL ROHAN TANNASSEE | : | CIVIL ACTION |
| | : | NO. 04-5766 |

**REPORT AND RECOMMENDATION**

CAROL SANDRA MOORE WELLS                                                October 31, 2006
UNITED STATES MAGISTRATE JUDGE

**INTRODUCTION**

Cecil Rohan Tannassee ("Petitioner") filed an application for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2255, on December 13, 2004, asserting claims that his trial counsel was ineffective. Petitioner is serving a federal sentence for conspiracy to distribute and possess cocaine in violation of 21 U.S.C. § 846. The Third Circuit summarized the facts leading to Petitioner's conviction as follows:

> David Lopez ["Lopez"] was a cooperating witness who testified about his cocaine purchases from [Petitioner]. Lopez, who resided in Reading, Pennsylvania, traveled to Lehigh Acres, Florida in the fall of 2000 to search for a new cocaine supplier. He met [Petitioner], who operated a small site construction business in Lehigh Acres, and told him of his search. After Lopez returned to Pennsylvania, [Petitioner] called him and said he was on his way with "half a key" of cocaine. [Petitioner] and Lopez met at a motel where [Petitioner] gave him a suitcase filled with 500 grams of cocaine. Lopez took the cocaine to his home, where Mathew Folk ["Folk"] met him and paid him $15,000 for it. Lopez, in turn, gave $13,000 to [Petitioner]. Lopez flew to Florida in January 2001 to get another 500 grams of

> cocaine from [Petitioner]. [Petitioner] rented a car for Lopez to drive himself back to Pennsylvania. Once home, [Petitioner] sold the cocaine to Folk for $15,000. As Lopez was returning the rental car to Florida, he was stopped for speeding in South Carolina. In their search of the car, police found and seized $15,865 in the trunk. While he was seated in the patrol car, Lopez called [Petitioner] on his cell phone and they discussed what he should say about the money and his need for bail.
>
> Over the next three months, [Petitioner] made four more deliveries to Lopez totaling more than 6 kilograms of cocaine. Lopez was arrested in his home on April 3, 2001 after he showed Folk some of the cocaine he had received from [Petitioner]. Folk had been arrested for selling cocaine one week earlier and had agreed to wear transmitting and recording devices when he visited Lopez. Following their arrests, both Lopez and Folk agreed to testify against [Petitioner]. Both had entered plea agreements and had been sentenced before [Petitioner's] trial.

*See United States v. Tannassee*, No. 03-1196, 96 Fed. Appx. 104, 104-06 (3d Cir. 2004). The Honorable Thomas N. O'Neill, Jr. referred this matter to the undersigned for a Report and Recommendation pursuant to Local Rule 72.1I(e), II (c) and 28 U.S.C.§ 636(b)(1)(B). Based upon pleadings received, an evidentiary hearing on June 7, 2006, applicable law, pertinent documents, and in-court testimony of Petitioner, Dennis Turner, Esquire ("Turner"), and Petitioner's brother-in-law, Ralph Laughton, Esquire ("Laughton"), this court hereby recommends that this petition for *habeas corpus* be denied. Findings of Fact and Conclusions of Law, pursuant to Fed R.Civ.P. 52(a), follow:

### FINDINGS OF FACT

#### A. UNCONTESTED FACTS

1. On October 25, 2002, after a jury trial in the United States District Court for the Eastern District of Pennsylvania, Petitioner was convicted of conspiracy to distribute and possess more than five kilograms of cocaine in violation of 21 U.S.C. § 846. *See Tannassee*, No. 03-1196, 96 Fed. Appx. 104, 104 (3d Cir. 2004).

2. On January 13, 2003, the Honorable Thomas N. O'Neill, Jr. sentenced Petitioner to 168 months of imprisonment, five years of supervised release, a fine of $17,500, and special assessment of $100.00. On January 15, 2003, the district court imposed a $150,000 forfeiture money judgment against Petitioner.

3. Petitioner, represented by new counsel, timely appealed his conviction and sentence, claiming that: (a) insufficient evidence was adduced at trial to establish that he had conspired to distribute cocaine, and (b) trial counsel was ineffective.

4. On May 10, 2004, the Third Circuit Court of Appeals affirmed Petitioner's conviction, expressly finding that there was sufficient evidence to sustain his conviction for conspiracy to distribute and possess cocaine. *See Tannassee*, No. 03-1196, 96 Fed. Appx. 104 (3d Cir. 2004). The Third Circuit dismissed Petitioner's claim of ineffective assistance of counsel, without prejudice, finding the record inadequate to evaluate this claim. *Id*. at 106-07.

5. This petition for *habeas corpus* sets forth three grounds for relief. Petitioner alleges that his trial counsel provided ineffective assistance by: (a) failing to argue the law of conspiracy either in a Rule 29 Motion or to the jury in closing argument; (b) introducing character evidence notwithstanding the fact that Petitioner had multiple prior *crimen falsi* convictions; and (c) insisting that Petitioner testify without seeking to preclude the admission of his prior *crimen falsi* convictions which were over ten years old. *See* Pet. at 5; *see also* Memorandum in Support of Petitioner's Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. §2255 ("Mem. In Support of Pet.") at 8.

### B. EVIDENCE PRESENTED AT THE EVIDENTIARY HEARING

6. Attorney Turner testified that he believed the government had a very strong case against

Petitioner; hence he did advise Petitioner to cooperate with the government and enter into a plea agreement. (N.T. 6/7/06 at 45, 53-54.) Petitioner testified that he informed attorney Turner at the onset of their attorney client relationship that he did not wish to plead guilty. (*Id*. at 45.)

7. Prior to the 2002 trial, attorney Turner traveled to Florida to meet with Petitioner to prepare for trial. *Id*. at 15, 55. Turner discussed trial strategy and recommended that Petitioner testify to counter the government's testimonial and documentary evidence against him. (*Id*. at 56-58.) Turner further suggested that attorney Laughton, Petitioner's brother-in-law, testify as a character witness at trial. (*Id*. at 16, 43.)

8. Petitioner testified that he informed attorney Turner that he did not believe it was a good idea for Laughton to testify as a character witness, because the government could then introduce evidence of his prior felony convictions. (*Id*. at 43.) Attorney Laughton testified that both he and Petitioner informed attorney Turner that they were not comfortable testifying at trial since they believed this testimony would open for the door for the government to introduce Petitioner's prior *crimen falsi* felony convictions. (*Id*. at 17, 31-32, 47.) Turner, however, believed that the testimony of Laughton and Petitioner was necessary to provide an alternative explanation for the contact between Lopez and Petitioner. (*Id*. at 58.)

9. Attorney Turner testified that, while developing his trial strategy, he considered not presenting evidence challenging the government's case based upon sufficiency of evidence and focusing on the elements of conspiracy to distribute cocaine. (*Id*. 65-66, 70-71.) He abandoned this strategy since he did not believe it would prevail against the government's evidence against the Petitioner. (*Id*.) Turner did not argue no "buy-sell relationship" existed, because he believed there was sufficient evidence to satisfy the elements of a conspiracy. (*Id*.)

10. Petitioner has three prior convictions for auto theft. (*Id*. at 32-33.) Attorney Turner did not file a *motion in limine* to preclude the government from inquiring about any of Petitioner's *crimen falsi* convictions. (*Id*. at 17-18.) Attorney Turner testified that he did not attempt to limit the introduction of these convictions because: (1) he felt at least one of the convictions was admissible, (2) the other two *crimen falsi* convictions would not have been harmful or prejudicial to Petitioner once the admissible conviction was introduced, since the crimes were of the same nature and occurred during the same general time period, and (3) the benefit of Laughton's character testimony outweighed any potential prejudice the introduction of these convictions would present. (*Id*. at 59-62.)

11. Turner believed the testimony of Petitioner's family members in his case-in-chief was his best weapon, because the jury might like their personality and deem them credible. (*Id*. at 60-62.) Attorney Turner believed that Laughton would present a very persuasive image and show that Petitioner came from a good family who gave strong family support. (*Id*. at 60-61.)

12. Although attorney Turner was aware that the introduction of the Petitioner's prior *crimen falsi* convictions would result in a cautionary jury instruction regarding the Petitioner's testimony, he was not aware of the exact wording of this jury instruction. (*Id*. at 66-67.)

13. After Petitioner's conviction, attorney Turner was partially paid to file a motion for a new trial, however, he failed to do so, since he found no meritorious issues to be raised other than issues relating to his own ineffectiveness as trial counsel, which he could not raise. (*Id*. at 67-68, 86-88.)

### C.  SPECIFIC FACTUAL FINDINGS

14. The court finds credible the testimony of Petitioner and attorney Laughton as to their discussions

with attorney Turner.

15. The court finds the testimony of attorney Turner credible regarding his trial strategy.

## **CONCLUSIONS OF LAW**

1. Federal jurisdiction to vacate, set aside or correct a sentence pursuant to 28 U.S.C. § 2255 exists when a petitioner is:

> claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack.

28 U.S.C. § 2255. The instant petition clearly alleges constitutional violations cognizable under this section. However, this court may grant Petitioner relief only if the alleged error constitutes "a fundamental defect which inherently results in a complete miscarriage of justice . . . [or] an omission inconsistent with the rudimentary demands of fair procedure." *Hill v. U.S.*, 368 U.S. 424, 428 (1962); *see also Caspar v. Ryan*, 822 F.2d 1283 (3d Cir. 1987), *cert.denied*, 484 U.S. 1012 (1988). A section 2255 motion may be summarily dismissed, without a hearing, when the "motion, files, and records, 'show conclusively that the movant is not entitled to relief.'" *United States v. Nahodil*, 36 F.3d 323, 326 (3d Cir. 1992); *see* Rule 4(b) of the Rules Governing § 2255 Proceedings. A defendant who bypasses an issue on direct appeal and subsequently attempts to raise it in a § 2255 motion must generally demonstrate both cause for his failure to raise the claim in his direct appeal and actual prejudice resulting therefrom. *See United States v. Essig*, 10 F.3d 968, 979 (3d Cir. 1993) (holding "*Frady's* cause and prejudice standard applies to § 2255 proceedings in which a petitioner seeks relief from alleged errors in connection with his sentence that he has not directly appealed."). *See also Wainwright v. Sykes*, 433 U.S. 72 (1977); *Engle v. Isaac*, 456 U.S. 107 (1982); *Murray v.*

*Carrier,* 477 U.S. 478, 492 (1986). Application of the foregoing standards mandates that Petitioner's claims be denied on the merits as the record conclusively shows that he is not entitled to relief. *See* 28 U.S.C. § 2255.

    2. Petitioner asserts that his trial counsel provided ineffective assistance (1) in failing to argue the law of conspiracy in a Rule 29 motion and also to the jury in closing argument, (2) introducing character evidence despite Petitioner's three *crimen falsi* convictions, and (3) insisting that Petitioner testify, without seeking exclusion of his prior *crimen falsi* convictions. Pet. at 5. The Government asks that these claims be dismissed, because trial counsel's performance was neither deficient nor prejudicial to the outcome of Petitioner's case. To demonstrate constitutionally ineffective assistance of counsel, Petitioner must satisfy the two-pronged federal constitutional standard established in *Strickland v. Washington*, 466 U.S. 668 (1984). First, he must demonstrate that counsel's performance was so deficient as to fall below an objective standard of "reasonableness under prevailing professional norms." *Id.* at 688. If counsel's performance was substandard, Petitioner must further show that the inadequate representation prejudiced his defense. *Id.* To demonstrate prejudice the petitioner must show that "there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id*. at 695. "A reasonable probability is a probability sufficient to undermine confidence in the outcome," *id*. at 694, but it is less than a preponderance of the evidence. *Id*. at 693, 694. Under *Strickland*, counsel is presumed effective; in order to prevail on an ineffectiveness claim, Petitioner must "overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 687.[1] Should Petitioner fail to satisfy either prong of *Strickland,* his claim

---

[1]The Court in *Strickland* explained:

necessarily fails, rendering inquiry into the remaining prong unnecessary. *See id.* at 697.

3. Attorney Turner's decision not to argue the law of conspiracy in a Rule 29 motion and to the jury in closing argument was reasonable trial strategy and therefore not deficient nor prejudicial to Petitioner's case. Attorney Turner concluded that the government had an overwhelming case against Petitioner and, therefore, urged Petitioner to enter into a guilty plea; Petitioner insisted on proceeding to trial. The government's case was supported by evidence and testimony including the testimony of Lopez and Folk, two cooperating defendants.[2] Hence, attorney Turner's decision not to argue the law of conspiracy in a Rule 29 motion and to the jury in closing argument does not constitute deficient representation under *Strickland*.

4. Attorney Turner's decision to present Attorney Laughton's testimony as character evidence, despite Petitioner's prior *crimen falsi* convictions, though deficient under *Strickland*, was not sufficiently prejudicial as to change the outcome of Petitioner's case. Petitioner has not met his burden under *Strickland* as to this claim. *See Marshall v. Hendricks*, 307 F.3d 36, 88 (3d. Cir. 2002) (holding that the burden is on petitioner to establish that counsel's performance prejudiced his defense). Attorney Turner should have concluded that the introduction of character evidence would open the door to the presentation of all three of Petitioner's prior *crimen falsi* convictions. Thus his

---

> Judicial scrutiny of counsel's performance must be highly deferential ... A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct from counsel's perspective at the time ... [T]hat is, the [petitioner] must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'

*Id*. at 687.

[2] The Third Circuit held that the government's evidence sufficiently established the existence of a conspiracy to distribute and possess cocaine between the Petitioner, Lopez and Folk. *See Tannassee*, No. 03-1196, 96 Fed. Appx. 104, 106 (3d Cir. 2004). While Petitioner argues that the Third Circuit ruling in this case does not control the issue of counsel's effectiveness it is noteworthy that there was sufficient evidence to convict Petitioner of the conspiracy charge. Therefore, counsel cannot be deemed inefficient for raising a non-meritorious claim which furthermore would not likely have changed the outcome of Petitioner's case. *See Parish v. Fulcomer*, 150 F.3d 326, 328-29 (3d Cir. 1998)*; Moore v. Deputy Commrs. of SCI-Huntingdon*, 946 F.2d 236, 245 (3d Cir. 1991).

decision to allow character evidence without filing a motion to limit the introduction of the three *crimen falsi* convictions was deficient and unreasonable. *See* F.R.E. 609 and 405(a); *Strickland*, 466 U.S. at 688; *see also Bell v. Cone*, 535 U.S. 685, 695 (2002). Nevertheless, inasmuch as the government presented overwhelming evidence of Petitioner's role in the conspiracy to distribute and possess cocaine, this deficiency would not likely have changed the outcome of the case. *See Strickland,* 466 U.S. at 687-88. Therefore, Petitioner cannot prove prejudice under the second prong of *Strickland*. 466 U.S. at 695.

     5. Attorney Turner's decision to have Petitioner testify as a defense witness, without filing a *motion in limine* to prevent his *crimen falsi* convictions from being admitted into evidence at trial, was also deficient. Yet, attorney Turner testified credibly at the evidentiary hearing that he believed Petitioner's testimony was essential to offer an alternative explanation for the contacts between Lopez and Petitioner. (N.T. 6/7/06 at 58.) Attorney Turner's well-meaning decision was deficient inasmuch as it "fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. First, he was aware of Petitioner's desire to forgo testifying but deemed his testimony crucial to prevailing in this case. Second, he was also aware of Petitioner's prior auto theft convictions and the possible admission of one of Petitioner's auto theft convictions under F.R.E 609. Third, he sought to present defense testimony from the Petitioner which could reasonably lead to an attack on Petitioner's credibility. Attorney Turner's decision to insist on Petitioner's testimony during trial was not reasonable or sound trial strategy. *See Strickland*, 466 U.S. at 687; *Bell,* 535 U.S. at 698. He was not obligated to have Petitioner's testimony knowing the potential admissibility of his prior *crimen falsi* convictions. Thus, attorney Turner's decision to have Petitioner testify was deficient. However, counsel's decision was not prejudicial to the outcome of Petitioner's case. The

government presented strong evidence to support its case and, thus, it is not reasonably probable that attorney Turner's deficiency would have changed the outcome of Petitioner's conviction. Therefore, attorney Tuner cannot be deemed ineffective under *Strickland*.

6. Attorney Turner's failure to file a motion for a new trial was not deficient inasmuch as he determined there were no viable issues for appeal other than issues related to his own trial performance, which he could not raise as Petitioner's counsel.

7. Petitioner has failed to show that attorney Turner's representation was both deficient and prejudicial to the outcome of his case, therefore, counsel did not render ineffective assistance. *See Strickland*, 466 U.S. at 688.

## CONCLUSION

Petitioner's claims lack merit. Therefore, his habeas petition pursuant to 28 U.S.C. § 2255 should be DENIED in its entirety. Accordingly, I make the following:

## RECOMMENDATION

AND NOW, this 31st day of October, 2006, for the reasons contained in the preceding report, it is hereby RECOMMENDED that Petitioner's claims be denied. There is no probable cause to issue a certificate of appealability.

IT BE SO ORDERED.

        */s/ Carol Sandra Moore Wells*
        CAROL SANDRA MOORE WELLS
        UNITED STATES MAGISTRATE JUDGE